**STATE of Missouri, Respondent,**

v.

**Donald Joe TUCKER, Appellant.**

**No. 53774.**

Supreme Court of Missouri,
Division No. 2.

March 9, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Fred A. Brooks, Springfield, court-appointed attorney for appellant.

MORGAN, Judge.

On October 11, 1967, the jury found defendant guilty of stealing and assessed his punishment at five years confinement. Sections 560.156–560.161, RSMo 1959, V.A.M.S. Defendant has appealed.

Initially we must determine what issues, if any, have been preserved for appellate review. The necessity for so doing was occasioned by the efforts of defendant to obtain a new trial in the trial court. Upon proper application, the time for filing a motion for new trial was extended to November 17, 1967. On that date, trial counsel filed a motion which was considered and overruled on November 27. On that same day, because of "oral statements" of defendant critical of his trial counsel, the trial court set aside its order overruling the motion for new trial, authorized trial counsel to withdraw and extended the time for filing an amended motion to December 18. On December 28, a further order was made extending the time to January 15, 1968. On January 4, defendant filed, pro se, an amended motion for new trial which charged, primarily, that he had been denied effective assistance of counsel. On January 16, defendant filed a supplemental motion, pro se, consisting of eight pages, wherein it was alleged that he had been denied most every conceivable constitutional right afforded an accused. On February 21, newly appointed counsel filed a second amended motion for new trial which not only incorporated all previously filed motions but added further alleged errors. The hearing on this motion, as reflected by a supplemental transcript of forty-five pages, was in the nature of and comparable to the usual post-conviction evidentiary hearing under Rule 27.26, V.A.M.R. The defendant and a would-be alibi witness, who was not called at trial, as well as trial counsel, testified. Relief was denied, judgment entered and this appeal followed.

The time allotted for filing a motion for new trial is specifically limited by Rule 27.20, V.A.M.R., which, in part, provides:

"Such motion shall be filed before judgment and within ten days after the return of the verdict: Provided, on application of defendant, the court may extend the time for filing such motion for an additional period of thirty (30) days: Provided further, *the court shall have no power to make another or further extension of the time for filing said motion*." (Emphasis added.)

"We have repeatedly held that the provisions of Supreme Court Rule 27.20, V.A.M.R. are mandatory, State v. Franklin, Mo., 379 S.W.2d 526, and that a motion for new trial must, in all events, be filed within the time therein provided. State v. Knicker, Mo., 364 S.W.2d 544; State v. Hooper, Mo., 364 S.W.2d 542; State v. Ash, Mo., 286 S.W.2d 808; State v. Crocker, Mo., 335 S.W.2d 32. The trial court was without 'power' to extend the time beyond forty days after the return of the verdict for filing a motion for new trial, and the motions in this case, filed long thereafter, were a nullity, State v. Crocker, supra, and preserve nothing for appellate review." State v. Crow, Mo., 388 S.W.2d 817, l. c. 819. Supplemental motions or amendments filed after such time are also ineffective. State v. Loyd, Mo., 233 S.W.2d 658. Note 116, Section 547.030, V.A.M.S.

As is obvious, the motion of November 17, 1967, was the only pleading filed in compliance with said rule. The one issue therein carried forward in the brief on appeal is: "The Evidence Was Insufficient To Support The Judgment of Conviction Against Appellant." We will limit our review to the one point preserved not only because of the mandate of the rule but also in appreciation of the necessity for some semblance of orderly procedure for appellate review. Defendant, of course, is not precluded from seeking such post-conviction relief as thought proper within the provisions of Rule 27.26, V.A.M.R., wherein his

many complaints may be fully developed and considered.

The challenge to the sufficiency of the evidence is not directed toward the question of whether or not a crime was committed but to the proof of defendant having been a participant. Wilbur Allen, night maintenance engineer for the Welsh Parking Company in Springfield, Missouri, testified he was on duty at 3:00 a. m. on July 9, 1967. For some reason his two sons, ages 11 and 6, were with him and asleep on the floor. As he started to open an outside door for an inspection tour, he was encountered by a man pointing a gun at him; inquiries were made as to when the police checked the plant and other employees were to arrive; assurances were given that Mr. Allen and the children would not be hurt, and the intruder was only interested in the company safe. Mr. Allen and the two children were marched outside and locked in the rear of a refrigeration truck. At some time, Mr. Allen noticed a second participant outside with a shotgun.

■ By cross-examination, counsel sought to establish that the area in question did not have sufficient lighting for Mr. Allen to identify, with certainty, the defendant. As shown by the evidence, there was no light in the room where the children were sleeping and which Mr. Allen had started to leave. However, it was shown that there were lights in the adjoining room and yard floodlights covered the outer area. Since the confrontation was both inside and outside the building, the evidence clearly provided a basis for the jury to accept the assertion that lighting was sufficient for identification.

A portion of Mr. Allen's testimony was as follows:

"Q. You stated as you started out the door you came in contact with another man?

A. Yes.

Q. Where was he when you first saw him?

A. He was standin' on the floor, right outside the door.

Q. Can you describe that individual?

A. Yes, sir.

Q. Would you do that, please?

A. Well, he was about six foot, over six foot, 'cause I was lookin' at the top of his head from there.

Q. Did he have a hat on?

A. No, sir, he had a crew cut. It was a fresh crew cut, looked like it had been cut that weekend, and he was wearin' a T-shirt.

Q. Were you able to see whether he was light or dark headed?

A. He was dark headed.

Q. All right, go ahead, please.

A. And he was wearin' a T-shirt similar to the one I got on here only dark black or dark blue.

Q. Were you able to see his face? A. Yes, sir, partly.

Q. Which part were you able to see?

A. From his nose on up.

Q. Why were you unable to see his face from his nose on down?

A. He had a bandana on his face.

Q. Did you see his hands?

A. No, he had gloves on.

Q. Did you see anything in his hands?

A. Yes, sir, he had a small caliber revolver.

Q. Where was that revolver when you first saw it?

A. It was in his hand.

Q. And in what direction was it pointed?

A. Right between my eyes.

Q. And about what distance from your face was this revolver?

A. Oh, it was just about that close. (Indicating by holding thumb and forefinger apart.)

Q. Did this individual say anything?

A. He told me to hold it right there.

Q. Would you be able to identify that individual if you saw him again?

A. Yes, sir.

Q. Is he in the courtroom?

A. Yes, sir.

Q. Would you point to him, please?

A. Right there. (Indicating)

Q. I am going to go over and stand behind an individual and will you tell me whether or not the individual behind whom I am standing is the individual you have just testified about?

A. Yes, sir.

\*　　\*　　\*　　\*　　\*　　\*

Q. (By Mr. Crow) What is it about this individual that enables you to identify him as the same man you have testified about?

A. His eyes, his forehead, his ears and his hands, well, not his hands, his arms and (pause), just know him.

Q. What is there about the forehead that strikes you as being the same?

A. I just know him. That's the only time I've ever had a gun between my eyes. It's just something you don't forget.

Q. Is there any doubt in your mind that this is the same individual?

A. No, sir. His hair is longer now.

\*　　\*　　\*　　\*　　\*　　\*

Q. About how long were you outside the truck and in the presence of this defendant before you were locked in the truck?

A. That was around five minutes, I guess, I was outside the truck, and then in the truck, why, it was off and on for 30 minutes or more, I guess, when he talked to me.

Q. So, you were face to face with this defendant for about five minutes, is that correct?

A. Yes, well, not face to face. Part of it was walking out there.

On cross-examination Mr. Allen testified, in part, as follows:

Q. Now, you say he had a bandana over his face?

A. Yes, sir.

Q. Over what part of his face now, Wilbur?

A. The lower part of his face. It was over the lower part of it, kind of across like that. (Indicating)

Q. Did it cover part of his nose?

A. Just the tip of his nose.

Q. Had it over his nose?

A. Yeah.

Q. Did it come up over his ears?

A. No.

Q. How was it fastened on?

A. Just tied in back behind.

Q. It came in below his ears?

A. Um-hmm.

Q. What color eyes did this person have?

A. They was about like yours.

Q. Blue eyes?

A. (No response.)

Q. I'm known for my bright blue eyes.

A. You are? No, really, I couldn't say what color his eyes were.

*   *   *   *   *   *

Q. I am talking about this man that stuck this gun in your face. You had a gun stuck between your eyes and you don't forget what happened. Now, what color was his eyes?

A. (Pause) Just like his. Just like his. (Indicating)

Q. What color were his eyes, were they black, were they brown or were they blue, like my eyes?

A. I still say they was blue.

Q. Are you positive the man who held you up had blue eyes?

A. (Pause) (No response.)

Q. Do you still say yes?

A. I still say—I won't bet on that. I'm not up here to perjure myself and I cannot truthfully say.

Q. You cannot truthfully say?

A. No, sir.

Q. That's what you mean, isn't it, Wilbur, that you cannot truthfully say what color the man's eyes were?

A. What color, yes, sir.

Q. So, would—when you say you identified him by his eyes, you didn't mean that, did you?

A. At the time I identified him and today I can still say that's the man.

Q. But you can't tell the jury what color his eyes were, can you?

A. Not right now, no.

*   *   *   *   *   *

Q. Did he have his name printed on his forehead?

A. Might as well have.

*   *   *   *   *   *

Q. (By Mr. Moon) So you don't identify him by a scar mark on his right cheek.

A. No, sir.

Q. Do you know whether or not the man that held you up there and put that gun at you had a scar mark on his right cheek?

A. He could have had a scar mark there, yes, sir. but—

Q. Now, it was light enough—

MR. CROW: Pardon me—

THE WITNESS: —the right side of his face was not toward me.

*   *   *   *   *   *

Q. You say that the voice that this man spoke today was similar to the voice you heard out there?

A. Yes, sir.

Q. But, Wilbur, can you be positive that that was the same voice?

A. Yes, sir. I say the only difference then and today is he was givin' the orders then; he isn't now."

Other identifying characteristics of defendant mentioned did include deep eye sockets and a receding forehead.

■ The witness was consistently positive in his identification and never wavered from his opinion. The minor inconsistencies brought out on cross-examination were not of such significance that we could declare as a matter of law that the probative value of his testimony was destroyed. "The testimony of a single witness, if believed by the jury beyond a reasonable doubt, is sufficient to establish the identity of the defendant in a criminal prosecution since the credibility of the witness and the weight of the evidence is for the jury." State v. Williams, Mo., 376 S.W.2d 133, 136; State v. Stockdale, Mo., 415 S.W.2d 769, 771.

In addition, other evidence connecting defendant with the crime was offered. Tommy, the eleven-year-old boy, testified that while on the floor he observed that the man standing nearby had on black boots. A woman tenant across the hall from where defendant had lived testified that between 8:30 and 9:00 a. m. on the date of the offense defendant came to her apartment to use the phone. She observed that he had on black boots, and overheard his comment that " * * * he had locked a man and two little boys in a truck * *" Because of her criminal record, including a fine for operating a house of prostitution, it is argued that her testimony must be disregarded. We know of no authority for declaring her disqualified as a witness because of her profession. Again, as with other witnesses, her credibility and the weight to be given her testimony was for the jury.

Clearly, the evidence presented constituted a sufficient basis to permit reasonable minds (the jury) to believe defendant participated in the crime charged. State v. Spraggins, Mo., 368 S.W.2d 407, 410.

The judgment is affirmed.

All of the Judges concur.