**STATE of Missouri, Respondent,**

v.

**Tyrell WEBB, Appellant.**

**No. 39126.**

Missouri Court of Appeals,
Eastern District.

May 1, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 15, 1979.

Harris, Kirksey & Thomas, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul R. Otto, Brenda Engel, Asst. Attys. Gen., Jefferson City, Courtney Goodman, Jr., Pros. Atty., Clayton, for respondent.

SMITH, Judge.

Defendant appeals from his conviction by a jury of second degree murder and resulting sentence of life imprisonment. We affirm.

The victim, Pierre Hawkins, and three other persons were in an automobile on Page Boulevard in St. Louis County at approximately 10 p. m. on July 13, 1976. The victim was driving, Linda Byrth was in the front passenger seat, Gregory Rutherford was behind her in the back seat, Judy Simpson was behind the driver in the back seat. All the passengers were seated at an angle so they could see each other and converse. A turquoise station wagon pulled up on the left side of the automobile of the victim, two handguns were displayed, and numerous shots were fired from the overtaking vehicle. Pierre Hawkins was struck in the head and arm by bullets and died from the head wound. Both Judy and Linda saw the guns and immediately ducked down on the floor. Neither saw the people holding the guns. Gregory saw the guns, and saw the faces of the persons holding them as he "eased down" to the floor of the car. He recognized defendant and Darrell Jones as the persons holding the weapons, but at that time did not see the driver. Hawkins immediately slumped over the wheel and the automobile continued several hundred feet down the road, eventually going over an embankment, down a steep hill to a building where it ran into a moving company truck parked near the building and stopped. All three passengers remained on the floor of the car until it stopped. Gregory then immediately exited the car and stated that "Tyrell and Darrell" had done the shooting. Judy was wounded in the hip and upon exiting the car took cover under the truck. Gregory ran up the hill and across Page to a drive-in movie to obtain assistance. As he was crossing Page he saw the turquoise station wagon proceeding in the opposite direction on Page and at that time identified the driver as Ricky Beavers. Gregory had previously known who Tyrell Webb, Darrell Jones and Ricky Beavers were. Upon returning to the Hawkins' vehicle after obtaining help Gregory stated that Tyrell Webb, Darrell Jones, and Ricky Beavers were the occupants of the car. When first questioned by the police, Gregory denied knowing the assailants because he testified he was "scared." Within an hour or so, however, he told the police the names of the occupants of the station wagon.

Gregory lived in the same house with Hawkins. Both Pierre Hawkins and a brother, murdered two weeks before Pierre, were narcotics dealers. Gregory denied that he was involved in narcotics traffic, even though he lived with the Hawkins brothers. Considerable evidence was elicited concerning the lighting conditions at the place where the shooting took place, and there was considerable dispute about exactly where on Page the shooting occurred.

Defendant presented an expert witness, a doctor specializing in ophthalmology, who testified to the difficulty in seeing and identifying the occupants of an adjacent vehicle under the lighting, stress, and temporal conditions existing at the time of the shooting. Defendant denied having been at the scene of the shooting, having participated in the shooting, or knowing Hawkins or Rutherford. He did not testify to an alibi.

■ Defendant contends that the evidence was insufficient to support the conviction, because the participation of defendant in the shooting was established only by the testimony of Gregory Rutherford and the accuracy of that identification was challenged by the testimony of the medical expert. The weight to be given the evidence and the credibility of the witnesses are determinations for the jury. The testimony of a single witness is sufficient, if believed, to support a conviction. State v. Tucker, 451 S.W.2d 91 (Mo.1970)[5]. Here the witness, Rutherford, was unshakable in his identification of defendant and his companions. He had a prior knowledge of who defendant was and his accusation of defendant was made immediately after the shooting occurred. There was evidence that the light was adequate to make the identification. Even defendant's medical expert did not testify that identification

was impossible under the circumstances, only that it would be difficult. The doctor did admit that identification of someone previously known would be easier than identification of a total stranger. The evidence was sufficient to support the verdict.

■ Defendant also contends that the absence of any black persons on the jury panel denied him a fair trial. At a hearing on a motion for new trial he adduced evidence that blacks are on venire panels in criminal cases in St. Louis County although in lower numbers than defendant considers proper. No evidence was introduced challenging the method of juror selection or establishing that the number of black veniremen in St. Louis County was disproportionately low. Nor was the evidence sufficient to warrant a conclusion that prosecutors systematically strike blacks from jury panels for discriminatory reasons. We find no merit in this point. State v. Warters, 457 S.W.2d 808 (Mo.1970)[4, 5].

■ Defendant also contends that the method of jury selection provided for in Sec. 496.040 R.S.Mo.1969 was not followed in this case in St. Louis County. The matter was not raised until the motion for new trial and is not preserved for review. State v. Wrose, 463 S.W.2d 792, (Mo.1971)[2]. Further, Sec. 494.225 R.S.Mo.1971 supercedes Sec. 496.040 R.S.Mo.1969, and permits computerized lists of qualified jurors and allows random computer selection of jurors—the method used in this case.

■ Defendant's final contention is that the court erred in permitting Linda and Judy and thereafter Gregory to testify about the statement made by Gregory after the shooting that Darrell and Tyrell were responsible for the shooting. Initially the defendant contends that the material was not revealed by the State upon request during discovery and for that reason should not have been admitted. No objection on that ground was made at the time the evidence was admitted. The matter has not been preserved for review. State v. Gadbury, 558 S.W.2d 426 (Mo.App.1977)[1, 2]. Additionally, the record does not reflect that these statements of the witnesses were reported or summarized in any memoranda, which was what defendant had requested in his discovery motion.

■ Defendant also contends that the statements were hearsay and therefor inadmissible. Defendant has not briefed this contention and it is deemed abandoned. No objection was made to the statements made upon Gregory's return to the scene after seeking help. The only objection was to the testimony of Judy Simpson concerning Gregory's statement as he exited the wrecked car. The statement objected to was made immediately after the car crashed, while the declarant was still in a highly emotional state following the shooting and the accident, and before the declarant had an opportunity to deliberate and fabricate a false statement. The statement was a spontaneous utterance produced by the shooting itself. It was properly admitted under the res gestae exception. See State v. Hook, 432 S.W.2d 349 (Mo.1968); State v. Scott, 535 S.W.2d 281 (Mo.App. 1976)[1, 2]. We also observe that the same situation is true of the second statement of Gregory made when he returned to the scene. That utterance was made within minutes after the shooting, Gregory was still in an excited state and the statement concerned a matter which he had just observed. We find no error in the admission of this evidence.

Judgment affirmed.

WEIER, C. J., and SNYDER, P. J., concur.