**Tyrell WEBB, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 49688.**

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 7, 1986.

**620**

Frank A. Anzalone, Clayton, for appellant.

William L. Webster, Atty. Gen., Paul La-Rose, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Presiding Judge.

Pursuant to Rule 27.26 appellant seeks to vacate his conviction of murder in the second degree and his sentence to life imprisonment. The conviction was affirmed on direct appeal. *State v. Webb,* 583 S.W.2d 536 (Mo.App.1979). A concise summation of the evidence may be found in that opinion and need not be repeated here.

When an experienced trial lawyer reviews the transcript of a trial conducted by another experienced trial lawyer, it is inevitable that the former will ask "why did he do this?" and "why didn't he do that?" As so often happens, such a merger of hindsight with second guessing has here given birth to a motion to vacate and set aside a conviction under Rule 27.26. We are called upon to review an accusation of incompetence and inadequate representation directed by appellant against the same lawyer who had successfully obtained acquittals for his accuser in five previous felony trials. Appellant's motion is aptly de-scribed by the words of Judge Billings in *Wilhite v. State,* 614 S.W.2d 33, 34 (Mo. App.1981):

> Here, the appellant has fired a scatter-load of alleged derelictions by his trial attorney through the double-barrels of hindsight and second-guessing in an effort to relitigate the question of his guilt and to challenge the sufficiency of the evidence to support his conviction.

The sole purpose of a Rule 27.26 motion is to determine whether a defendant's original trial was violative of any constitutional requirement or if the judgment was otherwise void. *Wright v. State,* 459 S.W.2d 370 (Mo.1970). It is not a proper vehicle for the relitigation of a defendant's guilt or innocence. *Fields v. State,* 572 S.W.2d 477, 480 (Mo.banc 1978). Our review of the denial of a Rule 27.26 motion is limited to a determination of whether the trial court's findings and conclusions are clearly erroneous, a determination which requires the formation of a firm and definite impression that a mistake has been made. *Deaton v. State,* 705 S.W.2d 70, 73 (Mo.App.1985). In order to establish entitlement to post-conviction relief on the grounds of ineffective assistance of counsel, the movant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. *Howard v. State,* 698 S.W.2d 23, 25 (Mo.App.1985). In the light of these guidelines we examine, seriatum, the eight charges of inadequate representation which appellant contends deprived him of the effective assistance of counsel guaranteed by the Sixth Amendment. Four of these alleged derelictions are directed toward pre-trial investigation and trial preparation. The other four concern alleged deficiencies during the trial.

I

FAILURE TO INTERVIEW CLAIRITHA BAKER, A POTENTIAL ALIBI WITNESS.

■ At the evidentiary hearing on the motion, appellant claimed that before trial he told his trial attorney, the late James Bell, that Clairitha Baker, the mother of his

child, would testify that he was at home with her at the time of the murder. This testimony is directly refuted by his trial testimony, that he could not remember where he was at the time. Moreover, Baker testified at the first motion hearing [1] that she saw appellant at 10:30 or 11:00 p.m. when she came home from her mother's house. At the second hearing she claimed to have been at work from 2:30 p.m. until 10:30 or 11:00 p.m. In either event, the murder was committed 1 to 1–1/2 hours before the time she claimed to have seen appellant. The motion court did not err in finding that Baker's proposed testimony would not have furnished an alibi for the time of the offense.

## II

FAILURE TO DEPOSE EYE–WITNESSES SIMPSON AND BYRTH BEFORE TRIAL.

At trial the state produced the testimony of three occupants of the murder victim's Cadillac. One of the occupants, Gregory Rutherford, testified he recognized appellant as one of the men who fired a fusillade of bullets into the Cadillac. The other two occupants, Judy Simpson and Linda Byrth, could not identify appellant. They did, however, testify that Rutherford immediately stated appellant and Darrell Jones were the assailants. Bell raised a hearsay objection.[2] At the conclusion of a bench conference concerning the objection, Bell stated to the assistant prosecuting attorney "what is she [witness Simpson] going to say? This witness refused to talk to me." Appellant now escalates Bell's remark into a dereliction of constitutional proportion.

At no time during the trial did Bell suggest he was surprised by evidence of Rutherford's spontaneous exclamation. The record establishes the evidence was disclosed at Rutherford's deposition. Further, Bell demonstrated he was well aware of Simpson's version of the incident when he brought out on cross-examination that the dome light of the Cadillac had been turned on so Simpson could see to roll a marijuana cigarette.

Appellant claims the failure to depose Simpson and Byrth constitutes inadequate representation. However, he does not even speculate regarding what information may have been disclosed by the depositions and how it would have been helpful to his case. *See Baker v. State,* 584 S.W.2d 65, 68 (Mo.banc 1979); *Murrell v. State,* 679 S.W.2d 397, 398–99 (Mo.App. 1984). Point denied.

## III

FAILURE TO INTERVIEW CO–DEFENDANT DARRELL JONES WHO OFFERED EXCULPATORY INFORMATION TO APPELLANT.

At the motion hearing, Darrell Jones, an alleged participant in the murder, testified he met with appellant in the County Jail in February, 1977. He stated he told appellant then that if Bell had asked him to do so, he would have testified at appellant's trial that appellant was not involved in the murder. Appellant's trial, however, took place in December, 1976, roughly two months before Jones' meeting with appellant. We can hardly find Mr. Bell guilty of a dereliction of duty under such circumstances. Moreover, we cannot find clearly erroneous the motion judge's rejection of Jones' claim that appellant did not participate in the crime. The trial court is entitled to believe or disbelieve the testimony of appellant and Jones, even if the testimony is uncontradicted. *Gragg v. State,* 700 S.W.2d 163, 165 (Mo.App.1985); *Simpson v. State,* 699 S.W.2d 100, 101 (Mo.App.1985). Here, the failure of appel-

---

1. An evidentiary hearing on this motion was held before the Honorable James V. Ruddy, on July 7, 1983, but not completed. After the death of Judge Ruddy, a second hearing was held before the Honorable James Hartenbach on October 15, 1984.

2. The admission of this testimony over counsel's hearsay objection was upheld under the spontaneous utterance exception to the hearsay rule on direct appeal. *State v. Webb,* 583 S.W.2d at 538.

lant to mention this fortuitous windfall when his motion for new trial was argued and when he was afforded allocution certainly casts doubt upon the credibility of the testimony. Similarly, Jones' willingness to testify that he committed the murder with others, not appellant, while the murder charge against him was still pending, is open to question. We cannot conclude the ruling of the trial court on this point was clearly erroneous.

## IV

### DEFENSE COUNSEL MET WITH APPELLANT ONLY ONCE BEFORE THE DAY OF TRIAL.

█ With this contention appellant totally ignores evidence that he talked to Allen Harris, Mr. Bell's law partner, who handled all of the pre-trial motions and depositions and that Bell and Harris regularly discussed the case. Appellant's only suggestion of prejudice as a result of the single meeting with Bell relates to the failure to discover the potential testimony of Clairitha Baker which, as discussed above, would not have been helpful. We also note Harris' testimony that appellant never mentioned a possible alibi to him and that Bell, in preparing the case for trial, "badly wanted" to be able to present an alibi defense but, under the circumstances, was forced to rely upon attacking the identification evidence.

Appellant had been represented by Bell in five prior felony trials. He was obviously familiar with Bell's office, including the functions performed by Harris. In fact, Harris testified he saw appellant every three or four weeks and sometimes more frequently. Appellant's contention that he is entitled to a vacation of his conviction because he saw defense counsel only once before trial is spurious.

## V

### FAILURE TO PRESENT DEFENSE OF ALIBI.

We have previously discussed the alibi defense aspect of appellant's claim of inef-

fective assistance of counsel as it pertains to pre-trial investigation and trial preparation. Under the evidence adduced at the hearing, the motion judge could justifiably have disbelieved the testimony that appellant had told Mr. Bell about a potential alibi before trial. Moreover, the testimony of Clairitha Baker that appellant was present when she came home, would not have precluded his participation in the murder one to one and one-half hours earlier.

## VI

### FAILURE TO DEVELOP DISCREPANCIES BETWEEN RUTHERFORD'S DESCRIPTION AND APPELLANT'S APPEARANCE.

█ In the argument portion of appellant's brief, he directs us to the pages of the trial transcript wherein Bell cross-examined Rutherford regarding what he had told the police about appellant's height and hairstyle. Bell is charged with incompetency because he failed to ask about a "scraggly beard" and he failed to develop the discrepancy between Rutherford's description of a "light-skinned Negro" and a "medium-skinned Negro," the descriptive term used by Allen Harris testifying at the motion hearing.

In order to prevail on a Rule 27.26 motion alleging ineffective assistance of counsel, a movant must demonstrate that the representation he was afforded was so far below the standards of a reasonably competent attorney that he was effectively deprived of his right to counsel as guaranteed by the Sixth Amendment of the United States Constitution. The contention here asserted by appellant does not even approach such constitutional dimensions. It is pure nit-picking. If convictions are to be vacated because a lawyer fails to ask every question which might have been asked, there will never be finality to criminal proceedings.

Mr. Bell's cross-examination of Rutherford on two occasions was extensive, covering a total of 29 pages in the transcript. We are not convinced the outcome of the

trial would have been different if he had asked a few more questions which hindsight indicates might have been asked. The absence of any prejudice resulting from this failure is fatal to appellant's motion. *Baker v. State*, 680 S.W.2d 278, 281 (Mo.App.1984).

## VII

### FAILURE TO OBJECT TO HEARSAY TESTIMONY.

The basis of this charge of incompetence occurred during the direct examination of a police officer by the assistant prosecuting attorney.

Q. At that time did he tell you the names of the people?

A. Yes, sir he did.

Mr. Bell: Objection, Your Honor.

THE COURT: Objection sustained.

Mr. Dittmeier continuing:

Q. He gave you the names?

A. Yes, sir.

Q. Okay, of the people that he said had shot at him?

A. Yes, sir, he did.

■ If the failure to make any objection to testimony does not constitute ineffective assistance of counsel, *Joiner v. State*, 621 S.W.2d 336, 338 (Mo.App.1981); *Coleman v. State*, 621 S.W.2d 357, 360 (Mo.App. 1981), surely the making of an objection which is sustained cannot do so, even though the prosecutor ignored the court's ruling.

In arguing that the testimony was improper and prejudicial appellant relies upon *State v. DeGrafenried*, 477 S.W.2d 57 (Mo. banc 1972). This case was overruled by the Supreme Court in *State v. Harris*, 711 S.W.2d 881 (Mo.banc 1986) which holds that the testimony by a police officer that the victim identified a defendant is not inadmissible hearsay where both the victim and the officer are present and subject to cross-examination.

Point denied.

## VIII

### ALLOWING EVIDENCE THAT APPELLANT WAS UNMARRIED AND LIVED WITH HIS GIRLFRIEND AND CHILDREN.

■ Responding to questions on cross-examination appellant testified that he lived with his mother, father, brother and his girlfriend and two children. Appellant claims Bell's failure to object to this evidence amounts to ineffective assistance of counsel because it permitted the state to impugn appellant's character.

Whether such evidence caused the jury to think less of appellant, previously identified as a participant in a gang style assassination which was but part of an on-going war between rival drug dealers, is doubtful at best. Nevertheless, as noted above, failure to object to testimony does not constitute ineffective assistance. *Joiner v. State, supra; Coleman v. State, supra.*

In conclusion, appellant's contentions are either refuted by the record or they are of such trivial insignificance that, viewed individually and collectively, they fail to warrant post-conviction relief.

Judgment affirmed.

SMITH and SNYDER, JJ., concur.

