STATE of Missouri,
Plaintiff–Respondent,

v.

Joe E. LITTLE, Defendant–Appellant.

Joe E. LITTLE, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 16331, 16735.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 29, 1990.

William L. Webster, Atty. Gen., Martin D. Kerckhoff, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent-respondent.

Marcie W. Bower, Columbia, for defendant-appellant-movant-appellant.

MAUS, Judge.

Count I of an amended information charged the defendant committed robbery in the first degree. § 569.020. Count II charged the defendant committed that felony with a dangerous instrument and was guilty of armed criminal action. § 571.015.1. Each count alleged he was a prior offender. A jury found defendant guilty on each count. The court sentenced him to imprisonment for terms of fifteen years and ten years to run consecutively. He appeals those convictions. The defendant also filed a motion for relief under Rule 29.15. Following an evidentiary hearing, that motion was denied. He appeals from the denial of that motion. The appeals have been consolidated but will be considered separately.

### No. 16331—Direct Appeal

The defense at trial was mistaken identity and alibi. The facts of the robbery related by the victims may be succinctly stated. On December 8, 1987, at approximately 6:30 p.m., Mack Spitzmiller, his wife, Elizabeth, and their teenage daughter Michelle, were in the living room of their home in Advance when defendant broke in their front door. He was wearing a ski mask which was rolled up on his head, exposing his face. All three of the victims were able to see the defendant's face before he pulled the ski mask down. The intruder carried a sawed-off shotgun. He ordered them onto the floor. The defendant immediately tied up Mack.

While the Spitzmiller family was on the floor, the defendant terrorized and physically abused them. He put the shotgun to Elizabeth Spitzmiller's head and ordered her to remove her jewelry. When Elizabeth attempted to hide an heirloom ring, he kicked her in the face. Michelle threw the ring to defendant.

During this time, two other men entered through the carport door. Elizabeth Spitzmiller got a glimpse of them as they went into the bedroom area of the home. Subsequent developments established they were Kevin Dobbs and James Edward Little (Eddie), brother of the defendant. The defendant joined them. The three intruders ransacked the bedrooms for about thirty minutes. Before they left, the defendant bound the mother and daughter and tied them together. The culprits left in a car with numerous items of the Spitzmillers' property, including guns, purses and jewelry. The Spitzmillers freed themselves and notified the Advance Chief of Police.

On December 11, 1987, law enforcement officers from Arkansas, accompanied by officers from Missouri, executed a warrant to search a house in Jonesboro, Arkansas. The house was rented by Becki Laughlin (Becki), who was the defendant's girlfriend. When the officers entered, they encountered Becki, the defendant and an unidentified younger man who was armed with a pistol. They found numerous items which had been stolen from the Spitzmiller home. The stolen "long guns" and the sawed-off shotgun, used in the robbery, were found concealed in the attic.

The defendant was extradited for trial in Missouri. His trial was set several times and continued at the instance of the defendant. It was continued once for the defendant to arrange for the presence of Becki. The defendant and his attorney anticipated she would testify the defendant was with her in Jonesboro, Arkansas, at the time of the robbery. At one time the trial was set for January 31, 1989. Becki was present to testify. However, the defendant had "jumped bond" and was arrested that day in Meridian, Mississippi, 350 miles away. Subsequently, defendant walked away from the Stoddard County jail. He was arrested that night driving a car near Bloomfield, Missouri.

■ The defendant's first point is that the evidence is insufficient to sustain the conviction because the state did not produce sufficient evidence to convince a rational trier of fact that defendant was the assailant, since the eyewitnesses had little or no opportunity to view the assailant and, under the totality of circumstances, the identification testimony was unreliable. To support this point, he first argues that all of the witnesses testified the intruder was wearing a ski mask which he quickly pulled

down to cover his entire face. He cites the testimony of Elizabeth Spitzmiller that it was only a few seconds before the intruder pulled down the ski mask. He emphasizes the inconsistency between her testimony and the testimony of Mack Spitzmiller that he "saw him when he come through with the mask right here, I looked him right square in the eyes for about three minutes." The defendant also points out that Michelle Spitzmiller testified in a companion case that she could not positively identify the person who came through the front door.

In emphasizing these inconsistencies, the defendant overlooks evidence clearly establishing that he was the intruder. The unambiguous identification by Mack Spitzmiller has been noted. In her testimony, Elizabeth said she was able to see the intruder's full face and identified the defendant. Michelle Spitzmiller also identified the defendant. At defendant's trial, she testified "I will never forget a face like that, when it was right in front of my face."

■ The asserted inconsistencies in the testimony of the witnesses go to the weight of the evidence of identification, *State v. Johnson*, 537 S.W.2d 816 (Mo.App. 1976), and it was for the jury to weigh that evidence. *State v. Murphy*, 753 S.W.2d 90 (Mo.App.1988). The testimony of a single witness, if believed by the jury beyond a reasonable doubt, is sufficient to establish identity. *State v. Tucker*, 451 S.W.2d 91 (Mo.1970). The jury weighed the evidence and found it sufficient to establish the defendant did break in the front door armed with a sawed-off shotgun.

Under this point, the defendant also argues the identification was insufficient because the identification witnesses testified the defendant had a mustache, or it seemed as if he had a mustache. He attacks this evidence of identification by his own testimony that on December 8, 1987, he did not have a mustache. He said the mustache shown in his picture taken in the Stoddard County jail more than two months after the incident was grown after he was arrested. He also presented the testimony of Marsha Creameans. Marsha had been a girlfriend of the defendant and his brother Eddie. She testified that Eddie had a mustache in 1987 but for the seven years she had known the defendant, he did not have a mustache. The two Stoddard County deputy sheriffs who were present at the defendant's arrest on December 11, 1987, testified the picture portraying the defendant's mustache was a good likeness of how he looked at that time. The credibility of the witnesses was for the jury. *State v. Reasonover*, 714 S.W.2d 706 (Mo.App.1986). The jury was entitled to and obviously did reject the defendant's explanation of his mustache.

The defendant also contends the evidence of identification is insufficient because of the testimony of his brother Eddie. Before the defendant's trial, Eddie had been convicted of robbery in the second degree by reason of his participation in the Spitzmiller robbery. At the defendant's trial, Eddie testified that he was the man who broke in the front door wielding the sawed-off shotgun. He said he was aided by Kevin Dobbs, but that the defendant was not there. He and Kevin left the stolen property at Becki's and told her it was Kevin's. Eddie added that Mack Spitzmiller had identified him as the armed intruder at Eddie's preliminary hearing. Marsha Creameans corroborated this identification by Mack. Mack Spitzmiller testified that he had never identified Eddie as the man who broke in the front door. He repeatedly identified the defendant. Again, the credibility of the witnesses was for the jury. *State v. Reasonover, supra*. It was within the jury's province to reject the testimony of Eddie and Marsha Creameans, and the jury did so. The defendant's first point on direct appeal is denied.

■ The defendant's second and last point on direct appeal is that the trial court erroneously found he was a prior offender. Prior to the trial, the state presented evidence of defendant's conviction in Oklahoma in 1987 of the felony of concealing stolen property. Defendant's point is based upon the premise that the state did not prove the offense he committed in Oklahoma would have been a felony if com-

mitted in Missouri. He recognizes that *State v. Barnard*, 678 S.W.2d 448 (Mo.App. 1984) holds that such proof is not necessary. He urges the court to reconsider *Barnard* and hold that such proof is necessary under § 557.036.2. However, *Barnard* is sound and there is no reason to hold otherwise. The issue was fully developed in *State v. Rellihan*, 662 S.W.2d 535 (Mo.App.1983). This point has no merit and the defendant's direct appeal is denied.

### No. 16735—29.15 Appeal

■ The defendant states one point in his appeal from the denial of his motion under Rule 29.15. By that point he contends the motion court erred because the evidence established he was denied effective assistance of counsel in two respects. He first contends error was committed because trial counsel failed "to make an adequate investigation regarding 'Becki' Laughlin, appellant's alibi witness, who would have presented a viable defense for appellant by testifying that appellant was with her when the alleged crime occurred." Trial counsel was Ted M. Henson, Jr.

While defendant's point does not so state, and his argument presents a series of disjointed legal propositions and unwarranted characterizations of trial counsel's efforts, defendant obviously refers to Becki's whereabouts at the time of defendant's trial on March 30, 1989. In considering the adequacy of trial counsel's investigation of Becki, it is appropriate to note that the items stolen from the Spitzmillers were found on December 11, 1987, in a house in Jonesboro, Arkansas, rented by Becki Laughlin. When the officers entered, Becki tried to hide Mrs. Spitzmiller's ring in her jeans.

At a time not clearly established by the record, defendant brought Becki to trial counsel's office. Apparently, she told trial counsel she would testify that defendant was with her at the time of the robbery. The defendant assured trial counsel Becki was his girlfriend and he would produce her. After the case was continued several times, it was set for trial January 31, 1989. Becki was said to be available to testify.

She was staying with an aunt in Corning, Arkansas, although there was testimony she was under subpoena. After the trial was not held because defendant jumped bail, she went to Arizona for 12 days. She then returned to Corning, Arkansas.

Defendant testified that later, before his trial on March 30, 1989, he talked to her by phone. She was in West Virginia. One Kathy Mauldin said defendant wrote her and asked her to contact Becki, as he wasn't getting any results. Defendant gave Kathy a phone number and an address. Kathy called but Becki and her son had moved. Kathy called defendant's grandmother and got a new address. Kathy contacted Becki through the police. Becki said she wasn't coming.

Trial counsel's last information was that Becki was in Corning, Arkansas. He called a relative of defendant's in Corning to find out Becki's whereabouts. Defendant said trial counsel talked to his aunt and grandmother. Either these relatives didn't know, or would not tell trial counsel where Becki could be reached. Trial counsel went to Arkansas and inquired in public places to locate Becki but was unsuccessful. Defendant does not suggest what other investigation trial counsel should have done. In questioning the defendant relative to his claims for postconviction relief, the trial court asked the defendant, "Mr. Little, you continue to blame your lawyer because your girl friend was not here—". "[Answer] No, I don't blame him for that. I blame him for other things." The motion court found trial counsel exercised reasonable efforts to locate Becki. That finding is supported by the record.

■ Defendant's second contention is that trial counsel rendered ineffective service by failing to object to portions of the state's closing argument. He complains of references to the defendant's attempt to use his brother and the jury, the fact his brother had nothing to lose, defendant was a two-time loser, and the fact that after the defendant walked away from jail he was found in somebody's car. It was proper for the state to argue the defendant's trial tactics, his brother's credibility, his prior

convictions as affecting his credibility, and his escape as evidence of guilt. Trial counsel was not at fault for failing to interpose ill founded objections. *Scott v. State*, 741 S.W.2d 692 (Mo.App.1987).

Following the defendant's sentence, as stated, the trial court inquired concerning defendant's claims for postconviction relief and ordered different counsel represent the defendant in such claims. In referring to defendant's trial counsel, the learned and distinguished trial judge observed, "I think he did a first rate job for you." This court agrees. The judgment of the motion court denying the defendant's Rule 29.15 motion is affirmed.

PREWITT and CROW, JJ., concur.