STATE of Missouri, Respondent,

v.

Jennifer J. ROBINETT, Appellant.

No. WD 59435.

Missouri Court of Appeals, Western District.

Submitted Oct. 17, 2001.

Dec. 26, 2001.

Craig A. Johnston, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Shaun J. Mackelprang, Asst. Attorney General, Jefferson City, for Respondent.

Before JAMES M. SMART, JR., P.J., HAROLD L. LOWENSTEIN, and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, JR., Judge.

Jennifer J. Robinett appeals her conviction by a Lafayette County jury on two counts of the class D felony of passing a bad check, pursuant to § 570.120 RSMo. The court sentenced her as a prior and persistent offender to two concurrent ten-year terms of imprisonment. Robinett contends on appeal that the State failed to sustain its burden of proof in that there was insufficient evidence to support conviction on either count.

### Factual Background

On August 9, 1999, Jennifer "Johnny" Robinett [1] was charged by indictment filed in Lafayette County with two counts of passing a bad check, in violation of § 570.120. The cause proceeded to trial on October 31, 2000. In this appeal, Robinett contests the sufficiency of the evidence to sustain her conviction.

Viewed in the light most favorable to the verdict, the evidence is as follows. On January 21, 1997, Robinett opened a checking account at the Bank of Iberia, in Iberia, Missouri, where she maintained a savings account. As of February 24, 1997, this checking account had a positive balance of $1,976.53. In March of 1997, the Bank of Iberia received a $2,000 deposit

---

1. The appellant sometimes goes by the name "Johnny Robinett," and some of the transactions were signed in that name.

for Robinett's account from a check written by Cathy Snyder on an account from a bank at the Lake of the Ozarks. Robinett withdrew $1,800 by money order concurrent to the deposit of the $2,000 check. The check was subsequently returned because the account it was written on had been closed. After the check was charged back to Robinett's account, on March 7, 1997, she was left with a negative balance of $1,840.11. Robinett continued to write checks on her overdrawn account, at one point reaching a maximum negative balance of $2,055.

On March 19, 1997, Carol Groves, cashier at the Bank of Iberia, sent Robinett a letter via certified mail informing Robinett that the $2,000 check had been charged back to her account and that it was "imperative" that Robinett contact the bank. Groves received a signature card signed "Johnny Robinett," signifying Robinett had received the letter. Groves also spoke with Robinett over the telephone on three separate occasions concerning Robinett's overdrawn account, at which times Robinett indicated she understood the account was overdrawn. Robinett's balance on March 24, 1997, at the end of her statement cycle, was a negative $2,005.11.

Once the account had become overdrawn, the Bank of Iberia returned any checks written on that account and did not credit them against the account. The checks written on Robinett's overdrawn account were not "posted," which means they did not show up on Robinett's statement. One of these checks, dated March 29, 1997, was written to "Kleinschmidt Family Western" for $231.23. This check was received at the Bank of Iberia on May 2, 1997. Charlene Short, manager of Kleinschmidt Family Western, identified State's Exhibit No. 2 as a check written to that store. Short indicated that in the past only she or her father ever ran the register at the store. Though Short couldn't say with absolute certainty that she had received the check from Robinett, she indicated that Robinett seemed familiar and that she had some recollection of the transaction in that she thought it was odd for a woman to be named "Johnny."

On August 15, 1997, Groves sent a second certified letter to Robinett informing her that Groves was coding Robinett's account "closed," that Robinett had an overdraft of $2,025, and that the bank expected payment of that amount in full from her. Again, Groves received a signature card back, indicating that Robinett had received the letter. Nevertheless, checks continued to be written on the now closed account. One of those checks was written to a "Total" station for $32.00 on November 10, 1997. This check was returned to Total, with markings indicating it had been passed on a closed account. Kenneth Hopkins, an employee of the Total station, identified State's Exhibit No. 3 as being a check he had taken from Robinett. Hopkins conceded that he was not absolutely sure it was Robinett who had passed him the check, but he was "pretty sure" she had passed the check. Hopkins testified that the check had been written in his presence.

In late 1997 and early 1998, the Lafayette County Prosecutor's Office sent Robinett four letters concerning the two bad checks. The office administrator for the prosecutor's office mailed two letters to Robinett concerning the check written to Kleinschmidt Family Western and two letters to Robinett about the check written to Total. These letters informed Robinett that criminal charges would be filed if she failed to pay the amount of each check, plus prosecutor's and merchant's fees. Robinett did not reply to the letters.

On July 1, 1999, Officer Clayton O'Donnell of the Higginsville Police Department

came into contact with Robinett. When he asked Robinett for identification, she provided him with a driver's license with the name of Susan Drummond. O'Donnell knew Susan Drummond and knew that Robinett was not Drummond. The officer took Robinett to the police department, where she revealed her true name. Robinett indicated that she was aware of several outstanding warrants for her arrest and was using Drummond's name until she got those warrants "taken care of." On August 9, 1999, an indictment was filed charging Robinett with the two counts of passing a bad check.

The cause went to trial on October 31, 2000. In addition to the eyewitness testimony, the State introduced into evidence the New Account Information Sheet bearing signatures of Robinett, thirty pre-overdraft checks bearing Robinett's signature, fourteen "posted" checks, and the checks made payable to Total and Kleinschmidt's. The only legal objection made by the defense (that the items were inadmissible because they tended to show "other crimes") was overruled. The court denied Robinett's motions for judgment of acquittal at the close of the State's case. Robinett presented no evidence or testimony in her own defense. During deliberations, the jury sent out two notes. The first note indicated that the jury needed the two checks "plus the other documents" and also requested a driver's license or "other example of a signature." The court sent back all of the admitted exhibits to the jury. The jury then sent back a second note asking, "Could we have something else that has a signature like a drivers license or official court document[?]" The trial court had the bailiff advise the jury that they were in possession of all the exhibits.

The jury returned guilty verdicts on both counts. On November 15, 2000, Ro-

binett timely filed a motion for judgment of acquittal and for a new trial. In that motion, Robinett averred that there was insufficient evidence to support the convictions. At sentencing, on December 11, 2000, the trial court overruled Robinett's motion for new trial and for judgment of acquittal and sentenced her as a prior and persistent offender to two concurrent ten-year prison sentences. This appeal followed.

## Points I & II:

### Insufficient Evidence to Support Conviction

Robinett makes essentially the same argument in both her points on appeal. She argues the court erred in overruling her motion for judgment of acquittal, in accepting the jury's guilty verdicts, and in sentencing her, because the State failed to prove beyond a reasonable doubt on both counts that Robinett was the person who had passed or made either check, since neither Mr. Hopkins, the only identification witness as to Count I, nor Ms. Short, the only identification witness as to Count II, could testify unequivocally that it was Robinett who had signed or passed the checks.

### Standard of Review

On an appeal challenging the sufficiency of the evidence to support a criminal conviction, the reviewing court "accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence and disregards all evidence and inferences to the contrary." *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). "[T]he relevant question [for the court] is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998) quoting *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## Discussion

 Robinett points out that the State has the burden of proving beyond a reasonable doubt the identity of the person who committed the crime. *State v. Kuzma*, 751 S.W.2d 54, 55 (Mo.App.1987). She also notes that while it is true a positive identification by a single witness who had an ample opportunity to observe the suspect is sufficient to establish identity and thus support a conviction (*State v. Tucker*, 451 S.W.2d 91, 95 (Mo.1970)), here, there was no positive identification of Robinett. Robinett argues that the vague and doubtful identification of her was insufficient to support the conclusion that she was guilty beyond a reasonable doubt.

Count I charged Robinett with the class D felony of passing a check written on a closed account, in violation of § 570.120,[2] on November 10, 1997, payable to "Total." In Count II, Robinett was charged with the class D felony of passing a bad check on March 29, 1997, in the amount of $231.23, payable to "Kleinschmidt's." Robinett asserts the State proved under Count I that the checks in question were passed on or about November 10, 1997,

and it also proved that at the time they were passed, the bank had closed Robinett's account, but the State failed to prove the identity of the person who passed the checks.

As to Count I, Robinett argues, although Mr. Hopkins initially responded in the affirmative to the leading question, "Q. You took that [check] from this defendant?", his entire testimony shows that he was not certain enough to convict Robinett beyond a reasonable doubt. Mr. Hopkins testified that he remembered taking the check about three years prior to trial and thought that it was mostly for gasoline. When asked, however, if Robinett had not been seated at the counsel table, but instead had been one of the jurors, whether he would have been able to pick Robinett out of the jury, he admitted that it would have been "hard to do," because he might have taken as many as 12,000 checks since the check in question had been passed. Hopkins knew that he was the one who had taken the check and that it had been written out in his presence. However, he acknowledged that he was "not absolutely, positively sure" that Robinett had passed the check. Hopkins concluded merely that he was "pretty sure" and he "believed" he had taken the check from her, Robinett observes.

---

**2.** Section 570.120 states in relevant part:

 1. A person commits the crime of passing a bad check when:

 (1) With purpose to defraud, he makes, issues or passes a check or other similar sight order for the payment of money, knowing that it will not be paid by the drawee, or that there is no such drawee; or

 (2) He makes, issues, or passes a check or other similar sight order for the payment of money, knowing that there are insufficient funds in his account or that there is no such account or no drawee and fails to pay the check or sight order within ten days after receiving actual notice in writing that

it has not been paid because of insufficient funds or credit with the drawee or because there is no such drawee.

\* \* \*

 4. Passing bad checks is a class A misdemeanor, unless:

 (1) The face amount of the check or sight order or the aggregated amounts is one hundred fifty dollars or more; or

 (2) The issuer had no account with the drawee or if there was no such drawee at the time the check or order was issued, in which cases passing bad checks is a class D felony.

\* \* \*

Robinett argues that Mr. Hopkins' identification of Robinett is insufficient to prove her identity beyond a reasonable doubt, in that it was "vague and doubtful," falling far short of the "beyond a reasonable doubt" standard. In support of this proposition, Robinett cites *City of Grandview v. Winters*, 768 S.W.2d 162 (Mo.App. 1989), in which the court ruled that the evidence could not support a conviction for improper lane usage, where the officer's testimony on the lane usage charge was "vague, indefinite, contradictory, and inconclusive." *Id.* at 164.

As to the evidence presented to support Count II, Charlene Short could not say for certain who at the store took the check since there were no initials on the check. She noted that "my father or I used to always be the only ones that run the register," and thus it could have been her father who took the check. Short doubted that any other employee from the store took the check, but stated that it was possible. When asked if she had a specific recollection of Robinett handing her the check in question, she replied, "Personally, I kind of think I did, because it was 'Johnny,' and I noticed it was a lady, but it was three years ago...." Short agreed that there could have been 15,000 checks written to Kleinschmidt's over that three-year period and that it was possible Robinett had been in the store on other occasions to purchase items by check or cash. When asked if she could say "beyond a reasonable doubt that [Robinett] is the one that wrote the check," Ms. Short replied that she probably could not. She concluded that she was "not one-hundred percent sure" that Robinett had passed the check. Robinett asserts that Ms. Short's testimony, as well, is insufficient to prove Robinett's identity beyond a reasonable doubt.

In both points on appeal, Robinett contends that the trial court erred in overruling her motion for judgment of acquittal because there was insufficient evidence that Robinett was the person who had passed bad checks. The appellate court must determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Chaney*, 967 S.W.2d at 52. Robinett concedes that the State proved a check was passed to Total in November of 1997 on a closed account in Robinett's name. She also does not contest that a check was passed to Kleinschmidt's on her overdrawn account. What Robinett claims is that the identifications by Mr. Hopkins and Ms. Short were not sufficient to determine beyond a reasonable doubt that it was Robinett who had passed the bad checks.

█ The State notes that appellate review on questions of sufficiency of the evidence is "limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Fairow*, 991 S.W.2d 712, 714 (Mo.App.1999). Credibility of witnesses and the weight and value to be given their testimony are matters within the province of the finder of fact and are not for review on appeal. *State v. Weeks*, 982 S.W.2d 825, 833 (Mo.App.1998).

The State argues that even if the testimony of Hopkins and Short had been insufficient to support a conviction, the other evidence in the case was sufficient to allow the jury to believe beyond a reasonable doubt that Robinett had committed the crime in question. Approximately forty-six different checks, each containing Robinett's signature, were entered into evidence. A comparison of the signatures on these checks, along with the signature on Robinett's "New Customer/Account Information Sheet," against the two checks in

question provided the jury with evidence from which to find, beyond a reasonable doubt, that Robinett had made or passed the bad checks, says the State.

Robinett's actual signature appears on the new account sheet in three places; her signature also appeared on the thirty pre-overdraft checks entered into evidence. The new account sheet was received in evidence without a challenge as to the authenticity of the signatures; Robinett cannot now dispute the authenticity of the signature on the new account sheet. Also, there was no objection to the authenticity of the pre-overdraft checks that were received into evidence. Thus, these documents could be used to prove the identity of the signatures on the checks written to Kleinschmidt Family Western and to Total. *See State v. Clark,* 592 S.W.2d 709, 717 (Mo. banc 1979). The jury was entitled to make the comparison of signatures. As section 490.640 states:

> Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute.

*See Hemonas v. Orphan,* 191 S.W.2d 352, 360–61 (Mo.App.1945) (jury could compare writing with or without expert testimony); *State v. Pace,* 192 S.W. 428, 430, 269 Mo. 681 (Mo.1917) (trial judge decision to admit purported signature in evidence provided basis for juror comparison without expert testimony.)

No argument is presented to this court that the signatures do not match.[3] It is also significant that the proprietor of the Total station confirmed that the check to his store was written out in his presence. There was also abundant evidence that Robinett knew the account was significantly overdrawn. In three conversations with bank officers about overdrafts, Robinett never denied writing overdrafts, or claimed there was some mistake, or that her checkbook had been stolen or lost.

We hold that the evidence presented was sufficient to allow a reasonable trier of fact to find Robinett guilty beyond a reasonable doubt.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

LOWENSTEIN and ELLIS, JJ., concur.

---

**3.** In fact, the exhibits have not been filed with this court for our review.