**STATE of Missouri, Respondent,**

v.

**Lisa SUTER, Appellant.**

Nos. WD 47886, WD 51285.

Missouri Court of Appeals, Western District.

Aug. 20, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1996.

Application to Transfer Denied Nov. 19, 1996.

HANNA, Judge.

The defendant, Lisa A. Suter, was convicted, by a jury, of first degree murder, § 565.020, RSMo 1994, and sentenced to life imprisonment without the possibility of probation or parole. She appeals from her conviction and the denial of her Rule 29.15 motion for post-conviction relief after an evidentiary hearing.

The defendant originally married the victim, Alfred Suter, in 1987. They divorced in 1989, and remarried in 1990. The defendant graduated from the St. Charles Police Academy in 1989. She owned a 9 millimeter gun, which she used for target practice. She worked as a police officer for six months before going to work for a wholesale fragrance company owned by Steve Green and Pawn Elkins.

In the spring of 1991, the defendant started her own wholesale fragrance company. She dated two of her employees, Billy Goodall and Dan Johnson, and occasionally engaged in sexual relations with Johnson.

The defendant asked Goodall if he would be interested in killing her husband. He refused. In September 1991, the defendant asked Johnson if he knew of anyone who could kill her husband. He spoke to an individual named Richard Johnson.[1] Richard Johnson was told that he would be paid for the murder from the proceeds of the victim's $200,000 life insurance policy. Richard Johnson refused to participate in the crime.

Thereafter the defendant began asking Dan Johnson on a daily basis about killing her husband. They developed a plan involving the defendant's gun, which she had taught Johnson to fire. The plan called for Johnson to shoot her husband, ransack his home to make it look like a burglary, and break out a basement window to look like an entry point. Johnson also was supposed to leave out a gun cleaning kit, so it would look like the victim had the gun out at the time of the burglary. He was to dispose of the gun by throwing it into the river.

Richard H. Sindel, Clayton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Theodore A. Bruce, Asst. Atty. Gen., Jefferson City, for respondent.

1. The two are not related.

Johnson got the gun from the defendant's home, using the key that she had given him. On October 10, 1991, Johnson went to the victim's home with the intent to kill him. Johnson and the victim watched television, but Johnson lost his nerve to kill him and left. The next day at work, the defendant became angry with Johnson when she learned that he had not shot the victim.

The next evening, Johnson again went to the victim's home to drink beer and watch television. When the victim passed out, Johnson fired a single shot at his head, killing him. Johnson panicked and left the house without ransacking it or getting out the gun cleaning kit. He went back later and kicked out a basement window. However, the inside of the window had paneling over it and could not have been used for entry. Johnson did throw the gun off a bridge.

Pawn Elkins and the defendant discovered the victim's body the next day and called the police. The police found a spent 9 millimeter casing and bullet fragment near the victim's body. The defendant admitted to the police that she owned a gun. She directed the police to the bedroom, but the gun was not found.

Later that day, the defendant, accompanied by her brother, Gene Dalton, participated in a videotaped interview. The defendant told the detective conducting the interview that she had never had an affair and that nobody at work was romantically interested in her. The defendant never named Johnson as a possible suspect.[2]

Dan Johnson was questioned by police and, although he initially denied any knowledge of the crime, he eventually confessed. In exchange for his testimony against the defendant at trial, the state agreed to let Johnson plead guilty to first degree murder and receive life imprisonment without the possibility of parole.

■ In the defendant's first point, she alleges that the trial court erred in submitting a first degree murder instruction based on accomplice liability. The defendant cites error in the fourth paragraph of the instruction, which reads:

> [T]hat with the purpose of promoting or furthering the death of Alfred Suter the defendant *aided or encouraged* Daniel Johnson in causing the death of Alfred Suter and *reflected upon this matter coolly and fully.*

(emphasis added).

First, the defendant argues that because the instruction used the words "aided" and "encouraged" connected by "or," the jury could have found the defendant guilty of accomplice liability based on either type of behavior. The defendant contends that the use of "encouraged" in the instruction does not describe culpable conduct and was, therefore, a misstatement of the law. The defendant notes that the words "aid" and "aiding" appear throughout the statute for accomplice liability, § 562.041, RSMo 1994, while the word "encourage" is not used anywhere in the statute.[3]

The fourth paragraph of the instruction followed the pattern instruction on accomplice liability, MAI–CR 3d 304.04, which reads, in pertinent part:

> A person is responsible for the conduct of (another person) (other persons) in committing an offense if he acts with the other person(s) with the common purpose of committing that offense, or if, for the pur-

---

**2.** Her brother, Gene Dalton, an attorney, testified in the Rule 29.15 hearing that he gave the police names of possible suspects from a list, which he had compiled.

**3.** The defendant contends that the comments to § 562.041 state that language located somewhere between "encourage" and "aid" was considered but rejected because it was too broad. The com- ments do not read this way. Rather, the comments state that this statute requires a "purpose to promote the commission of an offense," rather than liability for "knowingly providing substantial assistance should be" to one who commits an offense, because the latter language carried criminal liability too far.

pose of committing that offense, he *aids or encourages* the other person(s) committing it.

(emphasis added).

■ The instruction given by the court, following the pattern instruction of MAI–CR 3d 304.04, was based on § 562.041. "If a Missouri Approved Instruction is applicable, such instruction must be given to the exclusion of all others." *Roth v. Atchison, Topeka and Santa Fe Ry. Co.*, 912 S.W.2d 583, 591 (Mo.App.1995). The instruction submitted by the trial court has been approved by the Missouri Supreme Court and is mandatory. *Id.* "This court has limited authority to ignore approved instructions in Missouri." *Id.*

■ The broad concept of "aiding and abetting" suggests acts that could be construed as "encouragement" or its derivation.

> The law is well laid down that any person who is present at the commission of a trespass, encouraging or exciting the same by words, gestures, looks, or signs, or who in any way or by any means countenances or approves the same, is in law deemed to be an aider and abettor, and liable as a principal.

*State v. Richardson*, 923 S.W.2d 301, 317 (Mo. banc 1996), *quoting State v. Stidham*, 305 S.W.2d 7, 15 (Mo.1957). Even subsequent to the enactment of § 562.041 in 1979, the courts of this state have continued to construe aid given to another actor in a criminal enterprise to include encouragement. *Id.* 923 S.W.2d at 317. "In Missouri, then, the law of aiding and abetting has long been deemed to include acts of encouragement." *Id.*

Because the instruction here conforms to the law and follows the format of MAI–CR 3d 304.04, which sets forth the requirements for accomplice liability as construed by Missouri courts, we find no error.

■ Next, the defendant contends that the court erred in giving this instruction because it did not require the state to prove that the defendant possessed the requisite mental state required for first degree murder. Specifically, the defendant argues that the instruction failed to require the jury to find that the defendant deliberated and coolly reflected for some ascertainable amount of time.

The instruction provided "[i]f you find and believe from the evidence beyond a reasonable doubt ... the defendant ... *reflected upon this matter coolly and fully* ... then you will find the defendant guilty of murder in the first degree." (emphasis added). The quoted language correctly defined deliberation, and submitted the element of deliberation specifically as to the defendant. *State v. Richardson*, 923 S.W.2d at 318. The instruction required the jury to find that the defendant, herself, deliberated in order to find her guilty of first degree murder. The instruction did not relieve the state of its burden of proving deliberation. Point denied.

■ In her second point, the defendant argues that the court committed plain error in allowing the prosecutor to improperly question defense witness, Matthias Doeller, and to make false and misleading implications about his reason for testifying. Specifically, the defendant maintains that the prosecutor improperly questioned Doeller about the fact that he only served 120 days of a 20–year sentence and then, during closing argument, argued the obvious inference that Doeller received this lighter sentence in exchange for his testimony.[4] Defense counsel testified at the 29.15 evidentiary hearing that he did not object to this line of questioning because he did not feel that it was effective and because it actually worked in the defendant's favor.

Doeller testified that Johnson made statements in the penitentiary after he had been incarcerated for this crime, which showed that the defendant was not an accessory or participant in the murder of the victim. The

---

4. Mr. Joel Eisenstein, who was the defendant's trial counsel, represented Doeller in his efforts to enforce his agreement with the State of Missouri that he would be eligible for probation after serving 120 days of his 20 year sentence.

state contends that the prosecutor's questions and closing argument were directed at establishing Doeller's bias, motive, and incentive to lie about the statements that he attributed to Dan Johnson.

The doctrine of plain error is to be used sparingly. *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995). Under this doctrine, the defendant bears the burden of proving that the trial court's error so substantially violated the defendant's rights that manifest injustice or a miscarriage of justice will result if the error is left uncorrected, which is a much greater burden than demonstrating prejudicial error. *State v. Mitchell,* 897 S.W.2d 187, 190–91 (Mo.App.1995).

Appellate courts rarely grant relief on assertions concerning closing argument. *State v. Kempker,* 824 S.W.2d 909, 911 (Mo. banc 1992). This is because, in the absence of an objection and request for relief, the trial court's options are narrowed to an uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988).

The questions and argument here were not directed at defense counsel, but rather solely at Doeller. Such argument was relevant to impeach Doeller's credibility. There existed sufficient facts from which the prosecutor could base his inquiry into whether Doeller did have an incentive to fabricate testimony. Point denied.

In her third point, the defendant argues that the trial court erred in failing to grant her a new trial because the state failed to disclose favorable treatment given to one of its witnesses, Billy Goodall, in exchange for his testimony, and then failed to rectify his perjurious denial of any such treatment. This point is raised as newly discovered evidence.

The jury returned its verdict on February 26, 1993. The defendant then had 25 days in which to file her motion for a new trial.

However, this allegation was not raised in defendant's motion for new trial. It was not until April 23, 1993, that the defendant first attempted to raise this claim in a "Supplemental Motion for New Trial." The trial court gratuitously heard evidence on this matter, but denied the motion finding the allegation to be without merit.

The Missouri Rules of Court do not provide a procedure for its trial courts or appellate courts to consider new evidence first discovered after the time for filing a motion for new trial has expired. *State v. Hill,* 884 S.W.2d 69, 76 (Mo.App.1994). Motions filed out of time are nullities preserving nothing for review and can be reviewed only for plain error. *State v. Henderson,* 708 S.W.2d 206, 210 (Mo.App.1986).

Only in rare situations have appellate courts remanded cases to hear newly discovered evidence in order to prevent a miscarriage of justice. *See State v. Williams,* 673 S.W.2d 847, 848 (Mo.App.1984); *State v. Mooney,* 670 S.W.2d 510, 515–16 (Mo.App. 1984). Those cases involved exceptional circumstances in which the newly discovered evidence was substantive in nature and would have completely exonerated the defendants of the crimes for which they had been convicted. *Hill,* 884 S.W.2d at 76.

That is not the case here. After trial, the defendant learned that Goodall had a fifteen year sentence for armed robbery in Tennessee, that his parole had been transferred to Kansas, that Kansas had notified Tennessee that Goodall had been an absconder since January of 1991, and that a parole violation warrant was outstanding. The outstanding warrant was recalled and Goodall's parole was reinstated two weeks after the trial. The defendant *"theorized* that after learning that there was an active arrest warrant and hold order out for Billy Goodall, issued by the Tennessee Parole Board, Detective Roach of the St. Charles Sheriff's Department advised Goodall that he would help him with his 'problems' in Tennessee, if Goodall would help Roach with the Suter case." (emphasis added). The defendant maintains

that, in exchange for his testimony, Goodall was "assisted or protected from extradition to Tennessee for an almost certain revocation of parole and incarceration for the balance of his 15 year sentence." The defendant argues that, without this information, the jury was unable to "fully assess Goodall's credibility and motivation for testifying."

However, the defendant has presented no evidence that connects Goodall's testimony to the reinstatement of his parole. The specifics of this alleged deal have never been identified, nor has the defendant presented any evidence that this alleged deal even existed. It is only a theory of what may have occurred. To the contrary, Goodall adamantly maintained at trial that no deal existed. Further, at the hearing on the supplemental motion for new trial, the state presented testimony by Missouri state investigator Van Godsey and an authenticated letter from the State of Tennessee denying that there was ever a deal to "take care of" or withdraw the Tennessee warrant in exchange for Goodall's testimony against Suter. The defendant's theory cannot be characterized as anything but mere speculation.

Further, even if she had proven that a deal existed, its purpose was, at best, an attempt to impeach the witness. This does not rise to newly discovered evidence, which would cause the case to be reopened. Point denied.

■ In her fourth point, the defendant claims that the court erred in refusing to allow her to cross-examine Dan Johnson as to whether he had tested positive for the HIV virus. Defendant contends that such questioning would show Johnson's bias or motive, not impeach his character as immoral. The defendant wanted to show that Johnson had "nothing to lose" by implicating the defendant, because he is HIV positive and, thus, she argues, has a short life expectancy.

■ Evidence is relevant if it tends to prove or disprove a fact in issue, or if it corroborates other relevant evidence bearing on the main issue. *State v. Matheny,* 860

S.W.2d 837, 838 (Mo.App.1993). Trial courts are vested with broad discretion in ruling on questions of relevancy, and appellate courts should not interfere with a trial court's ruling absent a clear abuse of that discretion. *Id.* The trial court is also allowed broad discretion in deciding the permissible scope of cross-examination, and we again review only for an abuse of discretion. *Silvey,* 894 S.W.2d at 670.

Evidence that Johnson is HIV positive does not demonstrate that he was biased against the defendant's interests or that he had a motive to lie in order to see her convicted. Such evidence was not relevant and the court correctly prohibited this line of questioning. Point denied.

■ In her fifth point, the defendant contends that the trial court erred when it sent certain requested exhibits to the jury during its deliberations, before the defendant had an opportunity to review or object to the exhibits. The defendant specifically complains that Dan Johnson's plea agreement, a defense exhibit, should not have been sent to the jury. The defendant contends that had defense counsel been advised that the agreement was going to the jury room, "there is at least some possibility that he would have opted to review it, realized its catastrophic contents, and objected to its submission to the jury."

The record reflects that, approximately 11 minutes after the jury had retired for deliberations, the trial court informed defense counsel that certain exhibits had been delivered to the jury to aid them in their deliberations. Defense counsel objected, after he was told that the exhibits had been sent to the jury, arguing that if the jury requested any of the evidence, "it is only proper that they receive all of the evidence and not selected items." In her motion for new trial, the defendant again attributed error to the trial court in allowing certain items of evidence to be given to the jury "as it tended to emphasize those pieces of evidence rather than all of the evidence...."

The defendant now seeks to raise new allegations of error not asserted at trial or in

subsequent motions to the court. The defendant contends that she was prejudiced because her defense counsel was not allowed to review and object to the requested exhibits prior to their submission to the jury.

An accused is not permitted on appeal to broaden the objection he presented to the trial court. *State v. Tidwell,* 888 S.W.2d 736, 740 (Mo.App.1994). The point raised on appeal must be based upon the theory of the objection made to the trial court, and failure to do so preserves nothing for appellate review. *State v. Reichert,* 854 S.W.2d 584, 591 (Mo.App.1993). Point denied.

In her sixth point, the defendant contends that the motion court erred in denying her Rule 29.15 motion for post-conviction relief in which she raises numerous allegations of ineffective assistance of counsel.

Our review of the motion court's decision on a Rule 29.15 motion is limited to whether the motion court's findings and conclusions are clearly erroneous. Rule 29.15(k); *State v. Cottrell,* 910 S.W.2d 814, 816 (Mo.App.1995). Findings and conclusions are deemed clearly erroneous only if, after a full review of the record, we are left with the definite and firm impression that a mistake has been made. *Sidebottom v. State,* 781 S.W.2d 791, 795 (Mo. banc 1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990).

In order to prevail on a claim of ineffective assistance of counsel, the defendant must show beyond a preponderance of the evidence that: (1) her attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) that she was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

The second prong of the *Strickland* test (prejudice), however, is not presumed from a showing of deficient performance, but also must be affirmatively proved. *Id.* at 693, 104 S.Ct. at 2067–68. Prejudice is not proved by showing that trial counsel's errors had some conceivable effect on the outcome of the proceedings, but rather there must be proof of a reasonable probability that the result would have been different but for the errors of counsel. *Id.* at 694, 104 S.Ct. at 2068. Moreover, the defendant must overcome the presumption that counsel is competent. *State v. Debler,* 856 S.W.2d 641, 652 (Mo. banc 1993).

The defendant first claims that her trial counsel was ineffective because he admitted Dan Johnson's plea agreement into evidence as a defense exhibit and then failed to object to its submission to the jury. The plea agreement made reference to a polygraph examination, which the defendant maintains was highly prejudicial, the effect of which may have been to enhance Johnson's credibility with the jury.

On direct examination, Johnson testified that he had signed a plea agreement with the state. Pursuant to this agreement, the state agreed to let Johnson plead guilty to first degree murder and receive life imprisonment without the possibility of parole in exchange for Johnson's testimony against the defendant at trial. The plea agreement stated that if Johnson's testimony at trial was in any way untruthful, the agreement would be void and the state would ask for the death penalty. The plea agreement included a provision that Johnson would, at the discretion of the state, submit to a polygraph examination to ensure the truthfulness of his testimony. On cross-examination of Johnson, trial counsel offered into evidence a certified copy of the unsigned plea agreement to show that Johnson was untruthful about signing the agreement.

Shortly after submission of the case, the jury was provided, upon request, certain exhibits, including the plea agreement. Trial counsel objected on the basis that if any one exhibit was to be submitted to the jury during deliberations, then all of the exhibits should be submitted, so as not to highlight

any one exhibit. The objection was overruled. The amended 29.15 motion alleged that trial counsel was ineffective because he failed to keep the jury from viewing the reference to the proposed polygraph. The motion court ruled that trial counsel's action constituted trial strategy.

Trial counsel testified at the 29.15 hearing that he had reviewed the plea agreement approximately six months prior to trial and, at that time, realized that the jury should not view the reference to the polygraph. He testified, however, that at the time he offered the exhibit into evidence, he had forgotten about it.

Trial counsel erred when he offered the plea agreement into evidence, without first striking the reference to the polygraph test. It was foreseeable that the jury would interpret the proposed polygraph as enhancing Johnson's credibility. We disagree with the motion court's finding that the plea agreement was offered into evidence as a matter of trial strategy.

There were various options by which trial counsel could have proven that Johnson was untruthful about the signing of the agreement and the jury would not have learned about the polygraph. His failure in this singular respect was error. He should have been familiar with the contents of the document before offering it into evidence, since he only intended to prove that the witness had not signed it.

■■■■■ However, the matter of ineffective assistance of counsel must go beyond a mere error in judgment. *State v. Lay,* 896 S.W.2d 693, 702 (Mo.App.1995). The defendant must prove more than a mistake by his lawyer to establish ineffective assistance of counsel. *Montanye v. U.S.,* 77 F.3d 226, 230 (8th Cir.1996). The mistake must "undermine[ ] our confidence in the outcome of the proceeding." *Id.* (citation omitted). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

*Strickland,* 466. U.S. at 691, 104 S.Ct. at 2066. "[S]o long as defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland;* we discern no inequity in requiring him to bear the risk of attorney error." *State v. Brown,* 867 S.W.2d 530, 537 (Mo.App.1993) (citation omitted). This court must consider the totality of the evidence in determining whether a reasonable probability exists. *Lay,* 896 S.W.2d at 702.

Trial counsel proved, contrary to Johnson's testimony, that the plea agreement was unsigned, which impinged on his truthfulness, as did other inquiries by trial counsel. In sum, there was other evidence both questioning and supporting Johnson's character for truthfulness. Thus, the jury's knowledge of an unsigned document wherein Johnson had agreed to take a polygraph was not determinative of his credibility or the outcome of the case. Considering the totality of the evidence, trial counsel's mistake does not rise to the level of ineffective assistance of counsel which changed the outcome of the trial.

■■■■ The defendant next argues that defense counsel was ineffective in failing to object to the introduction of a credit card receipt, dated the day of the murder, which she claims was the product of an illegal search and seizure. The receipt was found in a duffle bag in Pawn Elkins' home. The defendant argues that trial counsel did not act as a reasonably competent attorney because he failed to object at trial to this evidence in order to preserve for appeal her motion to suppress, which had been overruled pre-trial.

The defendant's argument is premised on her assertion that the Mobil credit card receipt was the product of an illegal search and seizure. In that regard, defendant contends that the receipt was a part of her pre-trial motion to suppress. The error, she claims, was her attorney's failure to object to the admission of the receipt at trial. However, we are unpersuaded by defendant's position, because if the credit card receipt was subject to a motion to suppress, it has not been provided on appeal.

Upon review of the motion to suppress and the record of the suppression hearing contained in the legal file and referenced to by the defendant, we find absolutely no discussion of the Mobil credit card receipt found in the defendant's duffle bag in Pawn Elkins' home. There was a motion, which sought to suppress evidence discovered at the defendant's home (the crime scene), the defendant's office, and the defendant's car, on the basis that they were the product of illegal searches and seizures. The credit card receipt is not a part of that motion.

▮ It is the appellant's responsibility to provide this court with a meaningful transcript for review, and this court cannot consider matters not preserved on the record and contained in an approved transcript. *Lee v. Ofield*, 847 S.W.2d 99, 100–01 (Mo. App.1992). As the record appears before this court, the legality of the search of the defendant's duffle bag is not at issue. Therefore, we cannot say that the trial court clearly erred in finding that an objection by trial counsel during trial, challenging the legality of the search, would have been meaningless and nonmeritorious.

The motion court heard evidence on the search of the defendant's duffle bag from Elkins. Therefore, we will review the point on the record before us. The evidence presented at trial concerning the search of the duffle bag and the discovery of the receipt consisted solely of the testimony of Detective Steve Roach. Roach testified that the police received permission from Steven Green and Pawn Elkins to enter their home, and once inside, happened upon a duffle bag belonging to the defendant. Roach testified that Detective Brennan looked through the bag and found the Mobil credit card receipt and the defendant's last will and testament. There was nothing in Roach's testimony, the only evidence presented at trial on this issue, to indicate that Elkins did not consent to the search.

Pawn Elkins testified regarding the search for the first time at the 29.15 hearing. Her testimony contradicts Roach's trial testimony. She maintains that she told the police that she could not give them permission to go through the defendant's bag because it was not her consent to give. However, Elkins' testimony was sketchy and less than credible. Elkins and the defendant maintained a close relationship, which evolved into an intimate one before, during, and after the trial. Considering these facts, the motion court was not obligated to believe Elkins' testimony. We will not convict the court of error for determining the issue against the defendant.

▮ The defendant next asserts that trial counsel was ineffective in failing to obtain the parole records of state's witness, Billy Goodall. The defendant contends that the records could have proven that the state treated Goodall favorably with respect to his outstanding warrant in Tennessee in exchange for his testimony against the defendant. As discussed previously in this opinion, the motion court found that this issue was extensively litigated in the motion for a new trial hearing and concluded that there was no evidence to support a finding of a deal between the state and Goodall to obtain Goodall's favorable testimony. This issue has been decided adversely to the defendant on her direct appeal and it cannot be relitigated in a post-conviction proceeding by transforming it into a claim for ineffective assistance of counsel. *Miller v. State*, 856 S.W.2d 76 (Mo. App.1993).

The defendant next contends that defense counsel was ineffective in that he failed to object to the state's questions of defense witness, Michael Riley, about his conduct violations in prison and of defense witness, Matthias Doeller, about his lenient sentencing on an unrelated conviction. Their testimony concerned statements allegedly made by Johnson while in prison. Specifically, they testified that Johnson did not participate in the victim's murder and that Johnson had said that he "was going to take down" the defendant "because she had turned him in." Riley's and Doeller's testimony was directed at Johnson's credibility.

▮ With respect to Doeller, the defendant's claim is premised on her belief that

the state, during its cross-examination of Doeller, was allowed to raise unfavorable inferences concerning Doeller's credibility. The basis of this allegation is that Doeller received a sentence in an unrelated criminal case, which permitted his release after serving only 120 days of a 20 year sentence. On cross-examination, the state showed that the defendant's trial counsel was retained by Doeller after he was first sentenced and after Doeller had been denied eligibility by the Department of Corrections for a 120–day release. Trial counsel represented Doeller at the resentencing. At resentencing, Doeller obtained the 120–day release. Trial counsel did not object to this line of inquiry.

The defendant argues that these questions on cross-examination allowed the state to cast unfavorable inferences on Doeller's credibility. The unmistaken inference was that Doeller received favorable treatment in the unrelated case in exchange for his testimony in favor of the defendant.

Trial counsel testified at the 29.15 motion hearing that, at the time the plea agreement was made, he did not know whether Doeller knew Johnson. The motion court concluded that these questions were legitimate inquiries into the witnesses' biases and an objection would have been non-meritorious. We agree with the motion court's finding that an objection would have been non-meritorious. Witness Doeller's bias was a proper area of inquiry and there were sufficient circumstances respecting the plea to permit the questions.

■ With respect to Riley's testimony, trial counsel testified at the 29.15 hearing that he made the decision not to object because, as he watched the faces of the jurors, he "decided that not only was Riley giving more than he was taking but he was helping me and my client and not hurting me. . . . [The prosecutor] was attacking Riley and the jury was laughing."

■ This court will not second guess trial counsel regarding his trial strategy, tactics, or decisions. *Brown,* 867 S.W.2d at 536.

The motion court's finding of reasonable trial strategy was not clearly erroneous.

■ The defendant also claims that trial counsel was ineffective in that he failed to present evidence that defendant's business was successful in order to rebut the state's contention that the victim's life insurance money was a motive for his murder. The motion court found that defense counsel made a strategic decision not to present this evidence because it could have "backfired" and opened up more areas of cross-examination. This finding is supported by defense counsel's testimony at the evidentiary hearing that the business was not as successful as the defendant now contends. As trial strategy, it does not provide a basis for ineffective assistance of counsel. *See State v. Storey,* 901 S.W.2d 886, 900 (Mo. banc 1995).

■ The defendant next claims that trial counsel was ineffective in failing to rebut the testimony of Lisa Copeland, an employee of the defendant's fragrance company, who testified that the defendant removed $11,000 from the victim's briefcase to buy a new car, and in failing to object to the prosecutor's closing argument concerning this matter.

The motion court denied this claim because the only way by which the defendant could have rebutted this evidence was by her own testimony, which she knowingly chose not to do. The defendant contends that Copeland's testimony could have been rebutted by placing into evidence the lease agreement for the defendant's car, rather than by the defendant's testimony. The lease agreement showed that the defendant put $266 down when she leased the car and was responsible for 59 more monthly payments.

However, as the motion court found, "[t]he testimony [defendant] wanted her counsel to rebut was not as direct or clear as [defendant] asserts." At trial, Copeland testified that the defendant had told her that she had broken into the victim's briefcase and stolen some stocks and bonds. Copeland further testified that the defendant "basically used it as a card against [the victim] to buy her car."

The lease agreement would not have rebutted this testimony. Rather, the only way to rebut these statements would have been for the defendant, herself, to have taken the stand and denied having made them. However, the defendant voluntarily and knowingly decided not to testify. Point denied.

■ The defendant next asserts that defense counsel was ineffective in that he failed to introduce her brother's handwritten list of suspects. At trial, Detective Roach testified that the defendant had not given him a list of suspects. However, Dalton testified at the 29.15 hearing that he and the defendant had orally given the police names of suspects from a list that he had prepared. He did not testify that he gave his "notes," or a copy of them, to the police. The defendant now complains that defense counsel should have admitted into evidence Dalton's "notes," which would have corroborated his testimony.

■ At the evidentiary hearing, trial counsel testified that he tried to illustrate through Dalton's testimony that he and the defendant had given the police the names of potential suspects. Dalton's notes would have, at best, only been cumulative of his testimony. Failure to introduce cumulative evidence cannot be deemed ineffective assistance of counsel. *State v. Twenter*, 818 S.W.2d 628, 636 (Mo. banc 1991).

The defendant further asserts that defense counsel's direct examination of Dalton was "deficient" in that he failed to ask certain questions. The motion court denied the claim finding that defense counsel did question Dalton about some of the matters and that the defendant failed to present evidence to show what other information Dalton could have provided had he been asked about the other matters.

■ The defendant first argues that trial counsel was ineffective in failing, on redirect, to question Dalton about the defendant's statement to police in which she denied having had any affairs. The defendant urges that if trial counsel had questioned Dalton

about this matter, Dalton would have put the defendant's statement into context and shown that the defendant was not lying. However, this claim is without merit because, as the motion court found, Dalton did, in fact, testify as to this matter. Specifically, Dalton testified that the defendant had not stated to police that she had not had any affairs, but rather stated that she had not seen anyone that she thought could have committed the murder.

Second, the defendant claims that defense counsel was ineffective for failing to ask Dalton why the defendant had failed to take a gunshot residue test. However, at trial, Dalton, an attorney, testified that he suggested to the defendant that she not take the test. The defendant contends that this testimony did not go far enough and defense counsel should have delved further into the matter by asking Dalton why he had told the defendant not to take the test. The motion court concluded that trial counsel was not ineffective in failing to ask Dalton this question.

■ Whether or not trial counsel should have asked this question, convictions will not be vacated because a lawyer fails to ask every question that might have been asked or that may be thought of by inventive counsel many months after the trial's completion. Otherwise, there will never be finality to criminal proceedings. *Webb v. State*, 718 S.W.2d 619, 622 (Mo.App.1986). The motion court correctly denied this claim.

■ Third, the defendant complains that trial counsel was ineffective in failing to ask Dalton why the defendant had visited a car dealership shortly after her husband's death. The defendant contends that Dalton would have testified that he had specifically asked the defendant to get an estimate on the car, so that Dalton could prepare the victim's estate for probate. However, the evidence established that the defendant went to the car dealership to discuss trading in the victim's car for a Dodge Stealth. Thus, Dalton's testimony as to this matter would have made little or no difference in light of the evidence. Trial counsel was not ineffective for not asking the question.

The defendant's final claim concerning Dalton is that trial counsel should have elicited testimony from Dalton that he retraced Johnson's steps and that Johnson could not have committed the murder and arrived at the Magnolia Bar at 11:30 p.m. The motion court concluded that this was a strategic decision that fell within the reasonable discretion of trial counsel. Trial counsel testified that he made the decision not to use Dalton to retrace Johnson's steps because "it was a close call as to whether or not [Johnson] might have been able to do the things that he said he was going to do in that period of time." In light of the record we find that this was reasonable trial strategy and does not provide a basis for ineffective assistance of counsel. *Storey*, 901 S.W.2d at 900. The points concerning trial counsel's examination of Dalton are denied.

The defendant next argues that trial counsel was ineffective in that he failed to call Pawn Elkins as a witness. The motion court found that calling Elkins as a witness would have allowed the state to question her concerning potentially damaging matters, such as her personal knowledge of the defendant's misconduct, defendant's relationship to Johnson, and the intimate relationship between Elkins and the defendant. Trial counsel made it clear that he did not want Elkins on the stand, because "[h]er testimony opened doors that were disastrous for my client." Refusing to call Elkins as a witness was a matter of trial strategy, *State v. Brittain*, 895 S.W.2d 295, 301 (Mo.App.1995), and does not provide a basis for ineffective assistance of counsel. *Storey*, 901 S.W.2d at 900. Point denied.

In her final point, the defendant contends that the motion court erred in denying her motion for post-conviction relief because the prosecutor engaged in improper and prejudicial pretrial publicity. The prosecutor in this case appeared on "Hard Copy," a nationally syndicated news magazine show, which aired an exposé on this case. The show was broadcast approximately three weeks prior to trial.

A claim of pretrial publicity, which impinges upon the defendant's Sixth Amendment right to a fair and impartial jury is not cognizable in a post-conviction proceeding as violative of her constitutional rights. Although the defendant's Sixth Amendment rights were implicated by the alleged error, the question as to whether the defendant's right to a fair and impartial jury, allegedly tainted by pretrial publicity was violated, must first be tested by voir dire examination. The defendant does not complain that the voir dire process failed or that counsel was ineffective in failing to expose juror prejudices. The claimed error here is one that must be raised on direct appeal and she has waived her right to raise the issue in her post-conviction motion because it could have been raised on direct appeal but was not.[5] *Richardson v. State*, 773 S.W.2d 858, 861 (Mo.App.1989). The motion court correctly denied this claim.

The judgments of conviction and denial of the Rule 29.15 motion are affirmed.

LOWENSTEIN, P.J., and SPINDEN, J. concur.

5. Even if we were to consider the claim as appropriately filed under post-conviction procedure, there is no factual basis to support the claim of a constitutional deprivation of a fair and impartial jury. Pretrial publicity is not inherently prejudicial. *Storey*, 901 S.W.2d at 894.